## STATE OF IOWA;

### DES MOINES, JUNE TERM, A. D. 1869.

IN THE TWENTY-THIRD YEAR OF THE STATE.

---

PRESENT:

Hon. JOHN F. DILLON, Chief Justice.
" CHESTER C. COLE,
" GEORGE G. WRIGHT, } Judges.
" JOSEPH M. BECK.

---

HOWELLS v. PATTON, *et al.*

I. Per Curiam.

1. **Limitation, statute of:** EVIDENCE OF DEFENDANT: PLEADING. Whether the plaintiff, in an action where the defendant pleads the statute of limitations, will be permitted under section 2742 of the Revision, to show by the testimony of defendant, that the cause of action still justly subsists, unless it is averred by plaintiff, in his petition, that he will thus show it on the trial, left undecided.

2 —— INDEBTEDNESS OF DEFENDANT MUST AFFIRMATIVELY APPEAR. In order to remove the bar of the statute of limitations, under said section 2742, it must affirmatively appear from the testimony or answer of the defendant, that the cause of action still justly subsists.

## II. Per BECK, J., COLE, J., concurring.

3. —— Under section 2742 of the Revision, which provides that the limitation of the statute shall not apply, if from the answer of the defendant, or from his testimony as a witness, it appears affirmatively that the cause of action still justly subsists, a mere legal subsistence is not sufficient; it must be a subsistence in harmony with justice and equity, and not merely supported by technical rules of law.

4. —— The just subsistence which is required by the statute to affirmatively appear from the testimony or answer of the defendant, cannot be presumed under mere naked rules of evidence, nor inferred from the acts or silence of the defendant, but must be distinctly admitted by him. If his evidence merely fails to prove, in the estimation of the court or jury, the discharge of the cause of action, it is not sufficient.

## III. Per DILLON, Ch. J.

5. —— The burden is on the plaintiff to remove the bar of the statute; this he can do only by the defendant's testimony, or by his answer, and these the plaintiff is bound to accept as verities, as he can neither impeach the witness nor contradict his testimony by other evidence.

6. —— While it is not denied that the court or jury may weigh the testimony of the defendant, as in other, cases it must, when weighed, make out a case against him with affirmative directness. A doubtful or mixed case for the plaintiff, will not avail to rescue his case from the operation of the statute.

## IV. Per WRIGHT, J., dissenting.

7. —— To entitle a plaintiff to prove by the testimony of the defendant as a witness under said section 2742, that the cause of action still justly subsists, he need not do more than allege such just subsistence, without averring *how* he will show the fact.

8. —— While plaintiff must make it appear affirmatively from his adversary's testimony, that the cause of action still justly subsists, in doing this he is not confined alone to what defendant may say,

but his manner on the witness stand, his failure to answer, or his contradictory, inconsistent or unreasonable statements may be legitimately considered, and may have as much weight in determining the ultimate issue as positive words or his direct admissions of a still subsisting liability.

9. —— If the matters disclosed show that defendant should not be excused, or if they would not in an equitable or legal forum constitute a defense, but for the limitation, neither should they under the statute.

*Appeal from Jasper District Court.*

Thursday, April 7.

Action by ordinary proceedings upon two bills of exchange for $1,500 each, drawn by one Hooper upon Howells, Patton & Co., and by them accepted August 6, 1854, and afterward indorsed by the drawer to plaintiff, and also upon a promissory note executed by said firm July 1, 1854, to plaintiff, for $356. The said firm of Howells, Patton & Co., consisted of Israel F. Howells, the defendants Andrew Patton and Moses H. Keever; Howells died before the commencement of this suit. The original petition made only Patton defendant, as surviving partner, but, by an amended petition, Keever was also made a defendant, and the two were joined as surviving partners. The amended petition avers that Keever has never resided in the State, and that Patton has not resided within the State for and during ten years since the cause of action accrued; that for the space of twenty-two months said Patton, being a resident of the State, was in the actual military service of the United States, and that, excluding the time he was so in the military service of the United States, he has not resided for and during ten years in this State since the said cause of action accrued. The petition also avers, that "the cause of action aforesaid still justly subsists against both of said defendants." To this amended petition defendant Patton

answered, denying each and every allegation therein, and, as a special defense, set up that the cause of action was barred, because it had accrued more than ten years previous to the commencement of this action. Keever made no defense, and judgment upon default was entered against him.

The cause was submitted to the court without a jury. The defendant Patton was introduced as a witness by plaintiff, for the purpose of showing that the cause of action still justly subsists, and, as shown by the record, testified as follows: "The Hooper claim I thought I had settled satisfactorily with W. S. Clark, who represented himself as agent of Hooper, and officiated as agent in settling; Clark agreed to take Keever for the payment of these claims; there was a written contract between Keever and me that Keever should pay the drafts; Clark wholly agreed to it; he is the brother-in-law of Howells, and acting for Hooper; the arrangement was to give Keever time on these claims, twelve or eighteen months; I never paid the claims only in that way; I know of no other defense; I don't recollect as Clark had these bills of exchange."

*Cross-examination:* " There was a stock of goods belonging to the firm; I was in actual possession of them; I sold out the stock to Keever; gave up the goods and left the concern; W. S. Clark urged the arrangement to secure his own claim as well as Hooper's; Hooper advanced funds in England for merchandise; Clark was the one who negotiated with Hooper for these advances as the agent of Howells, Patton & Co.; they were sent, for acceptance, through Clark, and Clark claimed the right to see that this claim was paid; this paper was executed between Keever and me." (Here witness produced a contract between Keever and himself.) " This contract was the result of that arrangement; those bills of exchange are the same as referred to in the indorse-

ment on the contract as W. Hooper's two notes, $3,000, with interest, $3,018.55; they had gone to protest at that time."

For the purpose of showing that the cause of action still justly subsisted, plaintiff was permitted to introduce the deposition of Keever, which contained material evidence upon that issue, also the sworn answer of defendant Patton to the original petition, for the same purpose, wherein he states he never paid the said note, nor does he know whether it has been paid. The court found that defendant Patton had been a resident of the State for more than ten years prior to the commencement of this suit, exclusive of the time he had been in the military service of the United States. The contract introduced in evidence, and referred to by Patton in his testimony, binds Keever to pay the two drafts. The court found : " That it appears affirmatively from the testimony of said Keever, that a cause of action still justly exists against him, and also by the testimony of said Patton and his sworn answers filed herein, that a cause of action also justly subsists against him," and judgment was rendered against said defendants, Patton and Keever, for $3,886.85. Patton appeals.

*Seevers & Cutts* for the appellant.

*Putnam & Rogers* for the appellee.

BECK, J. — I. The several errors assigned by appellant's counsel may be resolved into these two, namely : First, the admission, under the state of the pleadings, of defendant Patton's evidence, to prove that the cause of action still justly subsists ; second, in finding from the evidence that the cause of action still justly subsists, and rendering judgment for plaintiff. It is insisted by appellant's counsel, that inasmuch as the

1. LIMITATION, STATUTE OF: evidence of defendant: pleading.

Howells v. Patton.

plaintiff in his petition does not aver that he will show by the testimony of defendant that the cause of action still justly subsists, he should not have been permitted to introduce the defendant as a witness to prove that fact. Upon this view is based the first assignment of errors as given above. It will be unnecessary to discuss or determine the point thus made, as in our opinion, the objection raised in the second assignment of errors, as above stated, is decisive of the case. To this one only will we direct attention.

II. Revision, section 2742, is in these words: " In actions founded upon contract the above limitations shall not apply, if from the answer of the defendant, or from his testimony as a witness it appears affirmatively, that the cause of action still justly subsists." In order to defeat the bar created by the statute, under the provision of this section, it must be made to appear affirmatively, from either the answer or testimony of the defendant, that the cause of action still justly subsists. From this we understand, that the answer or testimony of defendant must show that the cause of action has not been satisfied or discharged, if it in fact ever existed; that if it had a valid existence at any time, it has not thereafter been deprived of such existence; that no act has been performed by the parties which deprives the cause of action of its binding force and obligation. These facts being shown, it may be said to " still subsist." But it must be shown to " still justly subsist." By this we understand, that a legal existence or " subsistence" is not sufficient; it must be an existence, a subsistence, in harmony with justice, and not merely supported by technical rules of law. If so supported, and yet is contrary to justice and equity, it cannot be said to "justly subsist." It will not do to show a formal subsistence, a technical existence, or such

*(margin note: 2. —— indebtedness of defendant must affirmatively appear.)*

a cause of action as by the strict rules of law will be supported; it must be also in accordance with justice and equity.   Neither will the cause of action be said to justly subsist if it was inequitable, unconscionable, or illegal in its inception. *Robey et al.* v. *Knowlton*, 23 Iowa, 544.

It must " appear affirmatively" that the cause of action still justly subsists ; that is, its existence must not be presumed under mere naked rules of evidence recognized by the law, or inferred from the acts of the party, or from his silence.   The admission of the defendant, either in his answer or in his testimony, to the just subsistence of the cause of action, must be affirmative.   This is in accordance with the true meaning and force of the words used in the statute.

The view taken by plaintiff's counsel of this statute, and the construction he contends for, would practically defeat its operation.   Briefly, they are these, or rather they, in effect, produce these results, and lead to these conclusions :   The contracts upon which the suit is founded are evidence of the indebtedness, the cause of action, which will be presumed justly to subsist, until shown by defendant's testimony to be discharged.   The testimony is to be interpreted and considered as other evidence; if it fails to prove, in the estimation of the court or jury, the discharge of the cause of action, it must be taken as still justly subsisting.   The error in this view is this : the defendant is thereby required to show affirmatively, in order to have the benefit of the statute, that the cause of action has been discharged, or, in other words, that it does not justly subsist, — a vain and absurd thing, for he could defeat the action upon such testimony, without the statute.   But, according to the true interpretation of the statute, the plaintiff must show affirmatively, by the testi-

mony of the defendant, that the cause of action does still justly subsist.

Applying these principles to the evidence of defendant, we conclude that the cause of action is not affirmatively shown thereby still justly to subsist. It may be that, upon an issue whether the cause of action was discharged, the evidence would fail to show that fact; it certainly fails to show affirmatively that the cause of action still justly subsists, and that is the issue upon which it was admitted and which is alone to be determined.

It will be observed that defendant in his testimony makes no allusion to the note described in the petition, and which is, in part, the foundation of the action. His sworn answer to the original petition was read in evidence to show that the cause of action, so far as the note is concerned, still justly subsists. Without determining whether the answer was properly received in evidence, we are of the opinion that it fails to prove affirmatively the just subsistence of the cause of action upon the note. It avers that the note was executed by one of the partners for his individual debt, and that the firm received no consideration whatever for it. This affirmatively denies the just subsistence of the cause of action by the denial that it ever did justly exist, and fails, therefore, to take the case out of the operation of the statute. *Roby et al.* v. *Knowlton*, 23 Iowa, 544.

It is argued by appellant's counsel, that the finding of facts by the District Court in this case must be regarded by this court, as the verdict of a jury, presumptively correct, and that, to justify a reversal of the judgment, this presumption must be overcome by the record showing clearly and satisfactorily that the finding is contrary to the evidence. Without determining whether in this case, and cases of like character, such presumption exists in favor of the finding of the court, we are of the opinion

Howells v, Patton.

that, even admitting the rule, the evidence overcomes the presumption and makes it clearly appear that the judgment of the court is contrary thereto. It may be remarked that there is no conflict in the evidence. Patton was the only witness introduced by plaintiff to establish the facts necessary to take the case out of the statute of limitations. Upon his evidence alone was that question decided, and there is no other point of conflict in the case.

Reversed.

DILLON, Ch. J. — Upon a careful examination of the record, I am of opinion that the judgment of the court below ought to be reversed. I concur in the result reached in the opinion of my brother BECK, but not in all respects in the view he takes of section 2742 of the Revision. My idea of the statute as applied to the case is this: More than ten years had elapsed after the cause of action had accrued, and hence, *prima facie*, the plaintiff's action is barred. The defendant can rely upon the statute as a complete defense. He need show nothing more than the lapse of time. This lapse of time appearing, the plaintiff fails unless he can remove the bar of the statute. He sought to do this under section 2742. That provides that the limitation of ten years "shall not apply, if, from the answer of the defendant or from his testimony as a witness, it affirmatively appears that the cause of action still justly subsists." If it does not *thus* appear, the bar of the statute stands, and the plaintiff fails. In my judgment, it does not affirmatively appear from the evidence of Patton, the appellant, or from his answer, that the cause of action still justly subsists. What does Patton testify to? He shows that he was in possession of a stock of goods, and owed various persons, including Mr. Hooper, in England, who drew the bills in suit. One Clark had

procured Hooper to make the advances to Howells, Patton & Co. The drafts in suit drawn by Hooper were sent from England for acceptance through Clark. These were, at some time, indorsed to Howells, the plaintiff. Clark is the plaintiff's brother-in-law, and acted for Hooper. He represented himself as the agent of Hooper, and officiated as his agent in settling. Clark, finding Patton in possession of the goods, urged him (so Patton testifies) to sell out to Keever. Patton also testifies that Clark agreed that if Patton would sell and deliver the stock of goods to Keever, he would "take Keever for the payment of these claims."

It is by no means *certain* that Keever was liable on these drafts, and that by this arrangement, whereby Keever assumed to pay them (as he did by the written contract introduced in evidence), Hooper or the plaintiff obtained no new name or security. The drafts were drawn in April, 1854, on Howells, Patton & Co., of Cincinnati, Ohio. At that time Keever was not a member of the firm of Howells, Patton & Co., and hence the acceptance of the bills in suit did not necessarily bind him. He had sold out his interest in that firm, and ceased, as between him and his copartners, to be a member of it the September *previous* to the drawing and acceptance of the bills.

True, the evidence shows that Keever had been a member of the firm of Howells, Patton & Co., and that no notice of the dissolution of the firm had been given to creditors generally. But for aught appearing in the record, Hooper may never have known that Keever had been a member of the firm, or he may have known that he was not a member of it at the time he extended the credit and drew the bills. Hence, I say, it is not certain that, when Keever bought out Patton, in July, 1854, and agreed in writing to pay the Hooper debt, the latter

acquired no new name nor any additional rights. But, whether Keever was or was not before liable on these bills, I hold that if Clark was the agent of Hooper, or of the plaintiff (if he had then acquired the bills), and if as such agent he had authority to agree with Patton that if he, Patton, would sell out his stock of goods (worth, as shown by the written contract, the sum of $16,212) to Keever, that Hooper or the plaintiff would look to Keever for payment, and Patton, acting on this assurance, sold and delivered the goods to Keever, who afterward became bankrupt, these being the facts, I would hold that, after the limitation period had elapsed, the debt as to Patton did not, within the meaning of our statute, " still justly subsist" against him. But it is said that the evidence does not fully show that Mr. Clark had authority to make such an agreement. But, as I view the statute, that is not the true inquiry. It does not show that he had no such authority. There are circumstances tending to show that he was the agent of Hooper or the plaintiff, such as his connection with the creation of the debt, his procuring the acceptance, his probable possession of the paper, the subsequent payments received by plaintiff from Keever, and the long delay of more than thirteen years to bring suit against Patton.

Therefore, as it does not clearly appear that the arrangement whereby Patton was released, was without authority; as Patton acted on that arrangement and parted with his property on the faith of it; as more than ten years afterward elapsed and no claim was made against Patton, it is my judgment that he might rely on the statute of limitations, and that plaintiff failed to show affirmatively by him that his cause of action still justly existed.

Thus viewing the statute and the case, it is not essential, as I see, to inquire whether the claim of plaintiff must, in order to defeat the bar of the statute, be one

which is upheld by justice and equity, as well as by the rules of law. That question is discussed by my brothers BECK and WRIGHT, but as it does not seem to me to be necessarily in the case, I refrain from the expression of any opinion concerning it.

I hold that the bar of the statute was not removed by Mr. Patton's evidence, not because the plaintiff must show a just claim, in addition to showing one that is legal or equitable, but upon the ground that *prima facie* the statute protects the defendant; he may stand upon the lapse of time, and he need show nothing more. The statute is one of repose, and presumes he has paid the debt, or that the evidence of his defense may have perished; the burden is on the plaintiff to take down the bar of the statute; this he can do only by the defendant's testimony, or by his answer; these, that is the facts stated, the plaintiff is bound to accept as verities, as he can neither impeach the witness nor contradict his testimony by other evidence; and even the facts stated by the defendant are not sufficient to defeat the statute, unless it thereby affirmatively appears — that is, clearly, expressly, or by fair deduction, beyond reasonable controversy — that the cause of action still exists in its original force, against the defendant. I do not deny that the court or jury may, as in other cases, weigh the testimony of the defendant; but I do insist that it must, when weighed, make out a case against him with affirmative directness. When the limitation period has elapsed, the plaintiff's case is within the grasp of the statute. It must be wrested from this grasp by the plaintiff. For this purpose he is compelled to rely upon the facts stated or admitted of the defendant. He must take these facts just as he gets them. If he states that the plaintiff made an agreement with him, whereby he released him, the fact, thus stated, must be regarded as true. The plaintiff

cannot say, such a. story is most improbable, and ought not to be believed, and as this is the only ground on which the defendant relies to show a discharge of the debt, therefore it affirmatively appears, by his testimony, that the cause of action still justly subsists.

It does not thus *affirmatively* appear within the meaning of the statute. The prior decisions of this court have recognized, and, as I think, properly so, this word "*affirmatively*" as one which is important in evincing the intention of the legislature to be that the statute bar should stand unless a plain and clear case be made against the defendant by his own evidence or the admissions in his answer.

A doubtful or mixed case for the plaintiff will not avail to rescue a case from the operation of the statute.

I concur in the judgment of reversal.

WRIGHT, J. (dissenting). — Entertaining, as I still do, the views expressed in *Newfield* v. *Blawn* (16 Iowa, 297), I, of course, have no difficulty in holding with the court below, upon the first point made by appellants, and referred to in the foregoing opinions. I am clear that to entitle a plaintiff to prove by the defendant himself as a witness that the cause of action still justly subsists, he need not do more than allege such just subsistence in his petition. It is not requisite to let in such proof that the pleader shall aver *how* he will show the fact. Indeed, I believe that if the petition contained *no averment* on the subject, and the defendant should plead the statute, he could not, on the trial, object to his own examination for want of an issue to which it would be applicable. Certain it is, in my judgment, that he could not do so, when it is expressly averred that the cause of action still justly subsists. By this averment there is a fact stated, and this fact can only be proved in one way. A party may

observe the rules of good pleading by stating facts. But under no system of pleading, worthy to be called "a system," would he do so if he should undertake to state, as a fact issuable in its nature, *how, by what witnesses,* he expected to prove his allegations.

I agree with defendant's counsel, following *Allen* v. *Patterson* (7 N. Y. 478), and authorities without number, that every fact which plaintiff must prove to enable him to recover, must be distinctly averred or stated. But in the case before us, was plaintiff to prove that the cause of action justly subsisted, or that defendant would show it affirmatively in his testimony? Suppose he should show the latter a thousand times over — that is, prove by a cloud of witnesses that defendant had said, times without number, that he could testify and make it, by his testimony, to affirmatively appear that the cause of action still justly subsisted, what could it avail plaintiff? I answer, just nothing. When he establishes the former, however, he does just what the law requires. The one is a fact, the other a method furnished by law for establishing it. And this can in no way be more conclusively shown, than by supposing plaintiff to aver what appellant insists he should, and that it is denied in the answer. For, if the averment is material, it is, of course, issuable. And now, the issue joined, what is to be tried? Not, certainly, whether the cause of action still justly subsists, but whether the defendant will, by his answer, or his testimony as a witness, make it affirmatively to appear, etc. The latter proved for plaintiff, what gained? Just nothing. For the ultimate fact — does the cause of action still justly subsist — remains untouched. Thus far, there has been no material issue joined; none tried; none determined. So, that I say that the rule contended for by appellant's counsel with so much earnestness and ability, is not only

anomalous, but is unnecessary and without warrant in any provision of our system of pleading.

But the vital question, the one to which the argument has for the most part been directed, is, whether the court below erred in finding that it affirmatively appeared from the defendant's testimony that the cause of action still justly subsisted. My opinion is, that the finding was right, and hence, that the judgment should be affirmed. I differ from a majority of the court on the construction given to the statute; and also, as to the facts or the construction which should be given to them.

In the first place, I suppose the same rule applies in this as in other cases, and that we should not, therefore, interfere with the finding or verdict, upon the ground that it is against the weight of evidence, unless it be a clear case indeed. A discretion is wisely lodged with the judge trying the case, and it should not be controlled except in a clear case of its abuse. This is the uniform and repeated language of this court in ordinary cases, when the court below upon the evidence has granted or refused new trials, and I know of no reason why it is not applicable here. It is not true, that the facts are all settled. That the court below has nothing to do but apply the law, and that a mistake (so to speak), in such application, will be reviewed with the same freedom as if made at any other stage of the case. The court or jury must weigh the testimony just as in the trial of other issues or other causes. The inquiry is, what does the testimony upon which plaintiff relies, and upon which he must rely under the statute, establish? The duty to weigh and scrutinize what is said, to compare all parts of the defendant's testimony, and to determine from it whether the plaintiff has affirmatively sustained his averment, is as plain, and I feel bound to say, frequently quite as difficult as though there were a dozen witnesses

on either side. The burden, I grant, is upon plaintiff. Here we all agree. · Indeed, there can be no room on this point for disagreement. But precisely the same rules apply in ascertaining and weighing testimony in this as in all other cases. Plaintiff must make it appear affirmatively from his adversary's testimony (not in some other way), that the cause of action still justly subsists. But in doing this he is not confined alone to what defendant may say. · His manner may become evidence for or against him just as in other cases. His failure to answer, or his contradictory statements, may legitimately have quite as much influence in determining the ultimate issue as the most positive or express words. Thus, he may say he has paid the debt. In telling how, he makes statements irreconcilably at variance with each other, and clearly untrue in themselves, as that he paid at such a place, and in the next breath establishes beyond controversy, that he was not within a thousand miles of the place named at the time; that he had paid it in a certain horse, and then swears that he let another creditor have the same horse; that he paid it through a third person, and then admits that this person was dead months and years before such alleged payment.

Now, conceding all the time that plaintiff must *affirmatively establish*, I ask, may this not be as well done by the inconsistencies and unreasonableness of the statements made, as by the direct admission of a still subsisting liability? He must rely upon this evidence to make out his case, but he is not concluded by any single statement, nor deprived of the right to show from *all the testimony* upon which he is compelled to rely, that he should recover. And this being so, the court or jury must determine, guided by the same rules as in other cases, whether plaintiff has or has not established the truth of his statement. And the conclusion reached is entitled to the

same weight, and should only be interfered with upon the same grounds, as in other cases. Let us give this thought a practical application, that we may the more readily appreciate its correctness. If Clark was not the agent of Hooper, and had no pretense of authority to act for him in the alleged arrangement between the two defendants (Patton and Keever), no one would certainly claim that the cause of action did not still justly subsist; for the original indebtedness is admitted, and upon the transaction with Clark alone, is it claimed that it was paid, or the appellant discharged. Now, whether Clark was or was not such agent, was a question of fact, which, being determined from all the testimony, is entitled, in this court and upon this appeal, to the same weight as in any other case. And thus I might illustrate the same proposition in various ways. No, it cannot be; the law does not mean that a plaintiff may not sift thoroughly all that the defendant may say. It was never intended that the court should determine the case alone from the mere words of the witness. And yet, I repeat, that plaintiff must establish his case. And hence, if he should merely introduce his note, and the proof by defendant that he made it, and that it was given for a good and valuable consideration, I admit he could not recover, for the lapse of time bars his action, and he must show, in the manner declared by the statute, that the cause of action still justly subsists. If, therefore, the defendant should say that he knew nothing whatever about the transaction, this would be no such affirmative proof as the law requires. But suppose he admits the correctness of the claim in its inception, but says that he paid it by stealing a horse from one of the plaintiff's bitter enemies, and in no other manner, and he swears to the payment, no one would say that plaintiff had not made out his case, for the *law* says, that what you call and rely upon as payment, is not such; and, there-

fore, the cause of action is shown *affirmatively* to still justly subsist.

· But I by no means rest my dissent upon this ground alone, which I concede is one of practice, and which if decided either way would leave the graver and weightier question untouched. In my opinion, in no view of the case did the alleged arrangement with Clark (and the debt was paid in this way alone) release or discharge Patton. Plaintiff got no new security, obtained the promise of no new party. There was no consideration for the alleged promise. Plaintiff held Keever before. He held nothing more after. The agreement was not valid either equitably or legally. In other words, if plaintiff had brought his action within the ten years, Patton could not have avoided a recovery by this alleged agreement. It is not as though Keever was not already a debtor (and herein, as well as in other respects, the case differs from *Arnold* v. *Lyman*, 17 Mass. 400, and other cases cited by appellant); Keever only agreed to pay his own debt.

But it is insisted and held in the foregoing opinion, that, though defendant had no *legal* defense, yet, unless plaintiff's claim has a subsistence in harmony with justice, there can be no recovery. And hence it is said that though plaintiff's claim is supported by technical rules of law, yet if contrary to justice and equity it cannot be said to justly subsist. My belief is that in this thought there is radical error. I have read somewhere a remark of a judge, that a certain case was referred to be decided according to *law and equity*, and was hence out of court. The majority opinion refuses to allow plaintiff to stand upon *legal ground*, and sets up a standard of justice which knows no rule and opens into a field as indefinable as it is indefensable. The true rule must be that, if the matters disclosed show that defendant should not be excused either in a court of law or equity, the cause of action still justly sub-

sists. It will not do to say that it is *hard* that defendant should pay the debt; that he innocently (but without plaintiff's fault) relied upon others to see this debt paid; that to pay it will embarrass defendant, while plaintiff can do without it; nor to adopt any like reasoning.

If the matters stated would not in an *equitable or legal* forum constitute a defense but for the limitation, neither should they under this statute. We must not forget that we are *in a court.* That it is no part of its duty, nor within its *power*, to apply a cordial to all the wounds of the individual, to protect against every fancied or real injury. It is the boast of a court of equity, as of law, that it acts by known and settled rules; and it would truly be an evil day if, in the construction of the statute of limitations or any other, the courts should say that though there is no legal defense, yet because *justice* — a something which we worship and yet can neither describe nor define — stands in the way, therefore, defendant shall be discharged. The safety of litigants and the public is best protected by adhering to the law, and as we forget this, courts and people alike are apt to incur difficulty and trouble. In other words "justice," as well as " truth and law, according to the history of our jurisprudence, is to be found in the settled adjudications of the courts, and when judges leave the well trodden path of precedents, they are apt to find error and injustice." BECK, J., in *McClure* v. *Owen*, *ante*, 243. I think this judgment should be

Affirmed.